## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  15-23587-CIV-WILLIAMS

MICHAEL KORS, LLC,

      Plaintiff,

v.

CHUNMA USA, INC., *et al.*,

      Defendants.

_____/

## <u>ORDER</u>

**THIS MATTER** is before the Court on Defendant Chunma USA Inc.'s ("Chunma")
motion to transfer venue to 28 U.S.C. § 1404(a), (DE 9), in which Defendant Ross
Stores Inc. ("Ross") joins (DE 11).  Plaintiff Michael Kors, LLC ("Kors") filed a response
in opposition (DE 17), and Chunma filed a reply (DE 24).

### I.    BACKGROUND

Plaintiff Kors is a Delaware corporation with its principal place of business in New
York.  (DE 1 ¶ 3).  Kors has brought suit against Chunma, a California corporation with
its principal place of business in California, and Ross, a Delaware Corporation with its
principal place of business in California, asserting claims for trade dress infringement,
common law unfair competition, trademark infringement of an unregistered trademark,
trade dress dilution, and for cancellation of a federally registered trademark.  (DE 1; DE
9-2).  Kors "is a global luxury lifestyle brand," with more than 270 Michael Kors' stores
the United States and products sold in leading department stores throughout the United
States.  (DE 1 ¶¶ 6, 7, 11).  According to Kors, Chunma obtained a federal trademark

registration for the "NXXN Block Mark" and applied to register several other variations of this mark, including the "NXXN Circle Mark." (DE 1 ¶ 18). Kors contends that Defendants are improperly employing these marks on women's accessories and that these accessories "bear designs confusingly similar to Michael Kors' MK common law trademark and MK Trade Dress." (DE 1 ¶ 19). Kors alleges that these infringing accessories originate with Chunma and are then sold to others, including Ross, who in turn sell it to the consuming public. (DE 1 ¶ 20). Specifically, Plaintiff contends that Defendants infringing accessories are "offered for sale and sold to the consuming public on the internet, as well as in, among other locations, dd's Discounts stores operated by Ross and located in the District." (DE 1 ¶ 19).

Chunma in not incorporated in Florida, it is not qualified to do business in Florida and it does not have any subsidiary that is incorporated or qualified to do business in Florida. (DE 9-1 ¶ 2). With the exception of one employee in China, all of the Chunma employees involved in the design and trademarking of its products are located in Vernon, California. (DE 9-1 ¶ 3). Almost all of Chunma's books, records, and files relating to its trademarks and the purportedly infringing accessories are in Vernon, California. (DE 9-1 ¶ 4). Chunma sells its products to dd's Discounts[1] through Krista Roberts, a buyer for Ross, who is located in Los Angeles, California. (DE 9-1 ¶ 5). All of Chunma's sales to dd's Discounts are shipped to dd's Discounts' warehouse in California and all of Chunma's books and records relating to its sales and shipments are located in California. (DE 9-1 ¶ 6). All of the records regarding Ross's purchase of products from Chunma are maintained in California or New York; none of the records

---

[1] dd's Discounts is an operating unit of Ross and it, too, is headquartered in California. (DE 9-2 ¶ 3).

are in Florida.   (DE 9-2 ¶ 4).   Likewise, none of the Ross employees involved in the transactions with Chunma live or work in Florida.   (DE 9-2 ¶ 4).   Consequently, the Defendants have moved to transfer this matter to the Central District of California.

## II.   LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404(a). Although the movant bears the burden of persuading the trial court that the transfer is appropriate, the Court has broad discretion to determine whether transfer is justified. *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) (noting that "once a trial judge decides that transfer of venue is justified . . . the ruling can be overturned only for clear abuse of discretion, and the presumption in favor of the district judge is heavy.").

The Court applies a two-part test to determine whether an action should be transferred pursuant to 1404(a).   First, the Court determines whether the action might have been brought in the proposed transferee court.   *Meterlogic, Inc.*, 185 F. Supp. 2d at 1299.   Second, the Court engages in a balancing test, weighing various private and public interest factors to determine whether transfer is appropriate.   *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1281 (S.D. Fla. 2012).   Among the private factors considered by the Court are:   (a) the plaintiff's choice of forum; (b) the convenience of the parties; (c) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (d) the relative ease of access to sources of proof and location of relevant documents; and (e)

the financial ability to bear the costs of change. *Id.* at 1282. The Court also considers that following public interest factors: (a) the forum's familiarity with the governing law, (b) the forum's interest in adjudicating the dispute, (c) the burden of jury duty on the forum's community, and (d) the relative docket congestion. *Id.*

## III.   DISCUSSION

### A. The Central District of California is an Adequate Forum

Under 28 U.S.C. § 1404(a), the Court may only transfer a case if the proposed transferee court is a court where the case "might have been brought." The moving party must therefore establish that an alternative forum is available. *Trafalgar*, 878 F. Supp. 2d at 1285. An alternative forum exists when "jurisdiction is proper, venue is proper and the parties are amenable to service of process in the transferee forum." *Cellularvision Tech. & Telecommunications, L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007). The Central District of California meets each of these requirements.

First, this Court's jurisdiction is based on the Court's original jurisdiction over cases relating to patents, copyrights and trademarks. The same would be true if this action were brought in the Central District of California. Second, under 28 U.S.C. § 1391, venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391. As Defendants point out, the purportedly infringing merchandise was designed in California by Chunma's employees who are located in the Central District of California. In addition, all of the records relating to the design and manufacture of the allegedly infringing merchandise is located in California and all of the records regarding Chunma's sale of the merchandise to Ross

4

for distribution are located in the Central District of California. Moreover, Chunma sold the merchandise to Ross in California, through a buyer also located in California. Finally, both Defendants are amenable to service of process in California and have agreed that venue is proper in the Central District of California. Accordingly, the Court concludes that the Central District of California qualifies as a district in which the case could have been brought.

## B. Private Interest Factors

Ordinarily, the Court gives strong deference to the plaintiff's choice of venue. However, "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision*, 508 F. Supp. 2d at 1189.

### 1. Convenience of the Parties

Plaintiff and Defendant Ross, neither of whom is headquartered or incorporated in Florida, are major corporations with a nationwide presence. Although Kors has several stores in this district, it is not a resident here and has more than 270 stores throughout the country, including several in the Central District of California.[2] Both Defendants have their principal place of business in California, and Chunma is incorporated in California. Plaintiff protests that Defendants are trying to hinder Plaintiff's prosecution of its claims "by sending them to be tried on the other side of this continent." (DE 9 at 1). Plaintiff also argues that because it is headquartered in New York, Florida is more convenient because it is in "the same time zone and only a short

---

[2] Plaintiff argues that it has a "very special connection" to this district because, of the more than 270 stores in the United States, two—one in Palm Beach and one in Bal Harbour— "which Michael Kors representatives routinely visit" are located in this district. (DE 12; DE 18-4 ¶ 7). According to Defendants, Plaintiff has 19 company-owned stores in the Central District of California, as opposed to 14 company-owned stores in this district. (DE 24 at 6).

plane ride away" and because "email and telephonic communications with Michael Kors New York headquarters are much easier than attempting them from California." (DE 17 at 9, 10). Having chosen to litigate "*only* approximately 1,283 miles away," (DE 18-4 ¶ 7) (emphasis added), from its home forum, in a jurisdiction requiring Plaintiff to travel by plane, the Court finds Plaintiff's hyperbolic protestation unconvincing. *See Master Cutlery, Inc. v. Pac. Sol. Mktg., Inc.*, No. 1:13-CV-00819-JMS, 2013 WL 6440270, at *6 (S.D. Ind. Dec. 9, 2013) ("While California is located farther away from New Jersey than Indiana, [Plaintiff] would have to travel, likely by plane, to litigate in either place. The gain in convenience to [Defendant] if this case is transferred is far greater than the loss of convenience to [Plaintiff]."). And the Court has every confidence that Plaintiff, a "global luxury lifestyle brand . . . having a presence in approximately 100 countries" with "more than 270 Michael Kors stores located throughout the United States" (DE 1 ¶¶ 6-7) will be able to effectively engage in "email and telephonic communications" between New York and California.

Because both Defendants are at home in California and because none of the Parties has any significant connection to this district, the Court finds that this factor weighs heavily in favor of transfer to the Central District of California. *See Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (finding transfer was warranted for the convenience of the parties when plaintiff was not a resident of the forum in which it filed suit and defendant was headquartered in alternative forum).

## 2.  Convenience of the Witnesses

The convenience of the witnesses is given substantial weight in considering transfer of venue.  *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276.  "In determining which parties' witnesses are more inconvenienced by a venue, the court must qualitatively evaluate the materiality of the testimony the witnesses will provide in the case, and may not just compare the number of witnesses in each forum."  *Id.* at 1276-77 (internal quotations and citation omitted).  Because both Ross and Chunma have their principal place of business in California, the majority of the witnesses who were involved in the creation, distribution, and sale of the allegedly infringing products are located in California.  Specifically, four of the five Chunma employees involving in the design of its trademarks and products are in the Central District of California.  (DE 9 at 2-3).  None of the employees involved in the transactions between Chunma and Ross live or work in Florida, nor do any of Plaintiff's representatives.  (DE 9 at 3; DE 18-4 ¶¶ 6-8).  However, the Court gives less weight to the inconvenience imposed on employees of the parties than it does for non-party witnesses.  *See, e.g., Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012); *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014).  In addition to the employee witnesses, Chunma sells the allegedly infringing products to Ross through a non-party buyer, Krista Roberts, who is located in Los Angeles, California.  (DE 9 at 3).

Plaintiff asserts that it intends to call the following "non-party witnesses"[3] at trial: (1) their private investigators; (2) the individuals identified in the private investigators' declarations; and (3) "other witnesses working at various dd's Discounts stores, flea

---

[3] As discussed *infra*, only one of the witnesses identified by partial name is, in fact, non-party witnesses.

markets, and the Miami Merchandise Mart in South Florida, who have not yet been identified." (DE 18-4 ¶ 11).   According to Plaintiff's investigators, who are licensed in the state of Florida and work in the state of Florida, during a visit to one dd's Discounts store in Florida, the cashier, "who wore a name tag identifying herself as 'Shanika' referred to our purchase and the rest of Defendants' Infringing Merchandise being offered for sale there as 'wannabe Michael Kors bags' that can 'pass for them from far away.'" (DE 18-1 ¶ 5).   In addition, during a visit to another dd's Discounts store, a cashier "who wore a name tag identifying herself as 'Lafachel' made the following remark, while ringing up our purchases of items of Defendants' Infringing Merchandise and in response to my comment: 'I didn't know you sold designer handbags.' Lafachel: 'We have everything here, is this your first time here.'" (DE 18-1 ¶ 6).   Furthermore, the Plaintiff's investigators attest that "absent being subpoenaed to appear in court in Los Angeles, the three of us could not, and would not, appear to testify at trial there." (DE 18-3).[4]

The Court concludes, based upon the witnesses identified by the Parties, that there are more witnesses, with qualitatively important testimony, who will be inconvenienced by maintaining the case in this district.   To the extent that Kors premises its argument that this District is more convenient for its private investigators, this is a "convenience of its own making, based not upon its presence here, but rather on the fact that its investigator and attorney are located here." *Master Cutlery, Inc.*,

---

[4] Other than Plaintiff's private investigators, Plaintiff has not made any argument regarding the unavailability or unwillingness of the other witnesses to testify in the Central District of California. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478-79 (S.D.N.Y. 2006) (a party must particularly identify witnesses who are unavailable or unwilling to testify due to location and noting that if any witnesses were unavailable at trial, deposition testimony is a viable alternative)

2013 WL 6440270, at *6.  The convenience of hired or expert witnesses is "entitled to little or no consideration under Section 1404(a)." *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1338-39 (M.D. Fla. 2011); *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013) (the convenience of hired experts is of little or no significance on a motion to transfer). Accordingly, the Court finds the fact that Florida is more convenient for Kors' "non-party" investigators unpersuasive.[5]

Likewise, Kors suggests that the convenience of Lafachel and Shanika (last names unknown), two of the three persons identified by partial name in the private investigator's declarations, should be paramount in the Court's consideration.  However, it is clear from Kors' pleading that both Lafachel and Shanika are employees of the Defendants[6] and thus "[t]he weight of that inconvenience must be discounted, however, because courts are less concerned about the burden that appearing at trial might impose on witnesses who are employees of parties because it is presumed such witnesses will appear voluntarily." *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012).

Further, in analyzing a motion to dismiss, the Court considers whether the identified witnesses "have actual knowledge about the issues in the case." *Cellularvision*, 508 F. Supp. 2d at 1190.  Notwithstanding that Shanika and Lafachel are

---

[5] The Court is skeptical of Plaintiff's assertion that its, presumably retained, private investigators qualify as non-party, unpaid fact witnesses.

[6] Plaintiff speciously argues that Shanika's—whose last name is unknown and who is identified only as a cashier at dd's Discounts—description of the Defendants' merchandise as "wannabe Michael Kors bags" that can "pass for them from far away," is a "classic admission by a Defendant."  (DE 9 at n.16).

apparently employees of Defendant Ross, Plaintiff argues that they, as well as Mr. Johnson (first name unknown), a cashier at Johnson Beauty who gave a "non-verbal point of purchase assurance (a nod)," will offer unspecified testimony concerning the chain of distribution of the products and customer confusion.  (DE 17 at 8-9, n.16). Beyond a bare assertion that they may be called as witnesses, Plaintiff has not indicated what relevant evidence or knowledge these individuals possess as to distribution or sale of the products, customer confusion, secondary meaning, distinctiveness, or the strength of the marks.  Accordingly, the Court finds Plaintiff's speculative and unsupported suggestion that Shanika, Lafachel and Mr. Johnson would have qualitatively important testimony concerning the chain of distribution or customer confusion to be unconvincing and affords the convenience of these witnesses little weight.  Finally, it is appropriate to disregard vague statements about unknown and unnamed witnesses, like Plaintiff's "other witnesses working at various dd's Discounts stores, flea markets, and the Miami Merchandise Mart in South Florida, who have not yet been identified."  *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010).

On the other hand, both Defendants have indicated that all of the persons involved with the sale, distribution, merchandising, and trademarking of the allegedly infringing products and all of the records regarding these activities are located in California, and those witnesses are far more likely to have actual, substantive, and qualitatively important testimony than Shanika, Lafachel, and Mr. Johnson. Consequently, the Court finds that the convenience of the witnesses will be best served if this matter is heard in the Central District of California.

### 3.  The Ease of Access to Sources of Proof

Chunma's allegedly infringing trademarks were designed in California and almost all of Chunma's books, records and files relating to its trademarks are located in the Central District of California.  (DE 9 at 1; DE 9-1 ¶ 4).  Among these documents are the original artwork and design sketches.  (DE 24 at 10).  In addition, all of Chunma's handbags in inventory are located in California.  (DE 24 at 9).  The allegedly infringing merchandise was sold from Chunma in California, to a buyer located in California, and delivered to Ross in California. (DE 9 at 1-2; DE 9-1 ¶ 5).  All of Chunma's books and records relating to its sales and shipments to Ross are located in California.  (DE 9-1 ¶ 5).  Likewise, all of Ross's records regarding the purchase of the allegedly infringing goods from Chunma are maintained in California or New York.  (DE 9-2 ¶ 4).  None of those records are located in Florida.  (DE 9-2 ¶ 4).  Plaintiff dismisses this factor, stating that it is "well-recognized as a non-factor in the transfer analysis," and does not directly proffer any argument regarding the ease of access to sources of proof or the location of evidence.  (DE 17 at 14).[7]  And, other than the allegedly infringing merchandise, it appears all of Plaintiff's evidence relating to this case is located at its headquarters in

---

[7]  In their declarations, Plaintiff's private investigators state that the allegedly infringing merchandise, sales tags, receipts, and related photographs are being maintained in the custody of the private investigators.  The Court finds that this should be afforded less weight as Plaintiff allege a nationwide scheme of infringing merchandise.  *See Heckler & Koch, Inc. v. Precision Airsoft, LLC,* No. 109-CV-485-SEB-JMS, 2010 WL 1257450, at *2 (S.D. Ind. Mar. 25, 2010*)* ("Plaintiff rejoins that this district is more convenient for it as its investigation was conducted in Indiana, and thus, all of its documents and evidence pertaining to this action are located here.  However, as Judge Lawrence observed in *Heckler & Koch, Inc. v. Dong Ying Manufacturing, Inc.,* 2009 WL 4906930 (S.D.Ind. Dec.11, 2009), Plaintiff's convenience 'is a convenience of its own making, based not upon its presence here, but rather on the fact that its investigator and attorney are located here.'").  And, as is evident from the pleadings, the pictures have already been converted into an electronic format and can easily be accessed from any location, whether in California or Plaintiff's corporate headquarters in New York.

New York and will need to be transported regardless of whether this case is heard in California or Florida. (DE 18-4 ¶ 10).

In determining the ease of access to sources of proof, courts consider the location of the alleged wrong.  This dispute centers on intellectual property rights; specifically whether Defendants are infringing on Plaintiff's trademarks and trade dress. "Courts have observed that 'intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration' in adjudicating transfer of venue motions." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791-92 (S.D. Tex. 2005) (quoting *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.,* 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999)); *Quicksilver, Inc. v. Acad. Corp.*, No. CIV.A. 3:98-CV-1772R, 1998 WL 874929, at *3 (N.D. Tex. Dec. 3, 1998) ("Because this is a trademark infringement action, it is likely that much of the evidence would be located at Defendant's principal place of business."); *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, at *3 (N.D. Ill. Jan. 20, 2000) ("The second factor strongly supports transfer. In cases involving copyright and unfair competition claims, the material activities central to the claims occur where the allegedly infringing products are designed, manufactured and marketed."); *Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*, No. 04 C 7624, 2005 WL 396304, at *5 (N.D. Ill. Feb. 16, 2005) ("Trademark infringement claims focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the infringer's place of business

is often the critical and controlling consideration in deciding a motion to transfer.")
(internal quotations omitted).

Because of the nature of the dispute, because Defendants have identified
numerous sources of proof and documents located in California, and because Kors has
completely disregarded this factor, the Court finds that the ease of access to sources or
proof and the location of evidence favors transfer to the Central District of California.

### 4.  Financial Ability to Bear the Costs of Change

None of the Parties has offered any substantive evidence regarding its financial
ability to bear the costs of change.  However, the Court again however that Plaintiff has
identified itself as "global luxury brand . . . having a presence in approximately 100
countries" with "more than 270 Michael Kors stores located throughout the United
States" which has expended "millions of dollars in multi-media advertising . . . in the
United States and throughout the world." (DE 1 ¶¶ 6-7, 12, 15).  In addition, while Erica
Weiner, Plaintiff's Assistant General Counsel, Global IP & Brand Protection, asserts that
"it usually takes at least a full day for Michael Kors' representatives to travel from New
York to Los Angeles," she does acknowledge that Michael Kors's representatives
"routinely visit" South Florida, demonstrating a willingness to travel some distance to
litigate this case.  (DE 18-4 ¶¶ 6-7).  In contrast, Chunma describes itself as "a small
California-based corporation."  (DE 24 at 2).  However, without any evidence regarding
the Parties' comparative financial wherewithal, the Court considers this factor to be
neutral.

## C. Public Interest Factors

The public interest weighs slightly in favor of transfer.  Because this case is based on federal trademark law and non-state specific common law, the courts' familiarity with the governing law is factor is neutral as to transfer.  Likewise, because both this district and the central district of California are among the busiest in the country, this factor, too, is neutral as to transfer.  As for the other two public interest factors—the forum's interest in adjudicating the dispute and the burden of jury duty on the forum's community—the Court finds these factors weigh slightly in favor of transfer.  The Supreme Court has noted that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," and that there is an interest in "having localized controversies decided at home."  *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-9 (1947).

As set forth above, the Court finds that this matter has far more substantial connections to California than it does to this district.  Both Defendants have their principal place of business in California, the allegedly infringing products were created and distributed in California, and the Defendants' documents relating to those products, their design, and sale, as well as all of the employees involved in the design of the trademarks at issue are located in California.  Plaintiff is not a Florida corporation nor does it maintain its principal place of business here.  "Citizens in the Southern District of Florida have little interest in disputes between foreign businesses and normally should not be burdened by the litigation." *Cellularvision*, 508 F. Supp. 2d at 1192.  Even though some of the allegedly infringing activity occurred in this district, Plaintiff alleges that this activity has occurred throughout the country and seeks nationwide relief based on

federal law and national common law.   Further, the locus of the infringement is in California, where the goods were designed, sold, and distributed.   As such, the Court concludes that the public interest factors weigh slightly in favor of transfer.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to transfer (DE 9) is **GRANTED**.   Pursuant to 28 U.S.C. § 1404, this case is **TRANSFERRED** to the United States District Court for the Central District of California for all further proceedings.

**DONE AND ORDERED** in chambers in Miami, Florida, this 23rd day of February, 2016.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE